**So Ordered.**

**Dated: May 13th, 2020**



*NOT FOR PUBLICATION*

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>47 HOPS LLC,<br><br>Debtor. | Case No. 17-02440-WLH11<br><br>**MEMORANDUM DISPOSITION RESOLVING MOTION TO COMPEL**<br><br>**Related Docket Nos. 1120, 1135, 1136 & 1165** |

Application of the Bankruptcy Code's provisions regarding executory contracts to specific facts sometimes resembles solving a puzzle. Bankruptcy law suspends the usual rules of contract law and replaces them with time-bending principles that can yield unexpected results. Like some puzzles, however, the solution emerges if one applies first principles and carefully works through a problem.

This dispute requires the court to determine whether a counterparty to one or more asserted prepetition contracts with the debtor can successfully move for an order imposing a deadline by which the chapter 11 trustee must assume or reject the alleged contract using Bankruptcy Code section 365(d)(2).[1] If so, this could, potentially, alter the parties' positions in a related adversary proceeding in which the trustee seeks to hold the counterparty liable for an alleged postpetition failure to perform.

---

[1] The parties appear to assume that a successful motion would result in the trustee's rejection of any purported contract.

MEMORANDUM DISPOSITION
RESOLVING MOTION TO COMPEL        Page 1

17-02440-WLH11    Doc 1172    Filed 05/13/20    Entered 05/13/20 11:49:23    Pg 1 of 7

For the reasons discussed below, the court concludes that the motion is moot because the trustee cancelled the applicable contract before the counterparty presented any dispute to the court regarding possible assumption or rejection. Accordingly, the court will deny the motion to compel in a separate order.

## BACKGROUND & PROCEDURAL POSTURE

Debtor 47 Hops LLC operated as a merchant or broker of hops and related products. In that role, the debtor entered into supply or sales contracts with breweries, including the Onion Pub and Brewery, Inc. a/k/a Wild Onion Brewery Company.[2] Wild Onion is the movant here.

The debtor filed a voluntary chapter 11 petition in August 2017. The debtor's attempt to reorganize proved unsuccessful and, after a series of twists and turns, Mel R. Codd ultimately became the chapter 11 bankruptcy trustee in December 2018.[3] Although the debtor had proposed a chapter 11 plan, no plan has been confirmed in this case and no party in interest is currently pursuing confirmation of a plan.

In accordance with his duties under Bankruptcy Code section 1106, the trustee worked to monetize the debtor's assets, including its rights against contract counterparties. As relevant here, the trustee notified Wild Onion of asserted payment defaults under its contract with the debtor and offered seven days to cure the defaults.[4] Wild Onion did not cure the alleged defaults, so the trustee followed up with notice that he was cancelling the contract and seeking damages.[5] Once the

---

[2] Wild Onion appears to question whether any operative agreement between it and the debtor existed at all. For purposes of resolving Wild Onion's motion, the court necessarily assumes that a prepetition contract existed between the parties and that the agreement was subject to assumption or rejection at some point. Wild Onion's position regarding this question is preserved, however, for purposes of a related adversary proceeding discussed further below.

[3] *See* ECF No. 741.

[4] *See* Codd Decl., ECF No. 1136, Ex. B.

[5] *See id.*, Ex. C. The copy of the contract attached to the trustee's declaration does not include "standard terms" appearing in docketed copies of similar contracts with other counterparties. *Cf.* ECF No. 977, Ex. C at 7-8. These terms include a default clause creating an express right of cancellation **and** specifically preserving the debtor's ability to "recover from [the counterparty] all damages resulting from such cancellation including loss of profits." *Id.* at 8. If any agreement with Wild Onion omitted such terms, then Wild Onion may be correct that the trustee's unilateral cancellation negates the trustee's ability to recover damages for Wild Onion's alleged breach. This, however, is an issue appropriately addressed in the related adversary proceeding. The key point here is that the trustee gave unambiguous notice of cancellation and Wild Onion neither contested such notice nor indicated that it would treat the contract as remaining operative.

**MEMORANDUM DISPOSITION**
**RESOLVING MOTION TO COMPEL** Page 2

trustee concluded that Wild Onion would not submit the requested payments or settle on acceptable terms, the trustee commenced an adversary proceeding against Wild Onion.[6]

Wild Onion then moved to compel the trustee to reject its contract with the debtor.[7] The trustee opposed the motion.[8] The court held a hearing on May 7, 2020, at which it heard oral argument by counsel for each party. The matter is now ready for decision.

## DISCUSSION

### *Jurisdiction & Power*

The court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1334(b) & 157(a) and LCivR 83.5(a) (E.D. Wash.). The parties' dispute regarding the application of Bankruptcy Code section 365 is statutorily "core"[9] and "the action at issue stems from the bankruptcy itself."[10] Accordingly, the court may properly exercise the judicial power necessary to finally decide this dispute.

### *First Principles Regarding Executory Contracts in Bankruptcy Cases*

An executory contract is one in which future performance remains due by both parties to the contract.[11] "Such an agreement represents both an asset (the debtor's right to the counterparty's future performance) and a liability (the debtor's own obligations to perform)."[12] In order to maximize the value of bankruptcy estates for their stakeholders and facilitate reorganizations, the Bankruptcy Code allows an estate representative to lock in net-beneficial contracts (i.e., agreements where the value of the embedded "asset" exceeds the cost of the "liability") by assuming the contract and perhaps even assigning the contract to a third party once

---

[6] Adv. Proc. No. 20-80003-WLH.

[7] ECF No. 1120.

[8] ECF No. 1135.

[9] *See* 28 U.S.C. § 157(b)(2)(A), (O); *see also, e.g.*, *In re Hemphill Bus Sales, Inc.*, 259 B.R. 865, 871-72 (Bankr. E.D. Tex. 2001); *In re New York Deli, Ltd.*, 75 B.R. 797, 801 (Bankr. D. Haw. 1987).

[10] *Stern v. Marshall*, 564 U.S. 462, 499 (2011).

[11] *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1658 (2019).

[12] *Id.*

assumed.¹³ Alternatively, an estate representative can shed unfavorable agreements via rejection, which generally frees the bankruptcy estate of the "liability" associated with the debtor's unperformed obligations and, with a "twist as to timing," creates a deemed breach of contract "immediately before the date of the filing of the petition."¹⁴

The right of a bankruptcy trustee or debtor in possession to pick and choose among favorable and unfavorable executory contracts is one of the extraordinary powers provided by the Bankruptcy Code.¹⁵ Sifting through hundreds or even thousands of prepetition agreements is laborious, however, particularly in the face of the myriad disruptions occasioned by a bankruptcy filing. The statute thus provides a "breathing spell" during which the estate representative can decide whether a given executory contract should be assumed or rejected.¹⁶ In a chapter 7 case, the breathing spell is rather brief; absent extension, the trustee has 60 days to assume a particular contract before the contract is deemed rejected by operation of law.¹⁷ In cases under other chapters, however, the breathing spell can be much longer and generally will extend through the confirmation of a bankruptcy plan.¹⁸

During the interim period between the petition date and the deadline to assume or reject contracts, the bankruptcy estate enjoys significant benefits. Most notably, the contract is generally enforceable by, ***but not against***, the trustee or debtor in possession.¹⁹ This period of asymmetry can materially advantage the

---

13   11 U.S.C. § 365(a), (f).

14   *See id.* § 365(g)(1); *Tempnology*, 139 S. Ct. at 1661.

15   The modern Bankruptcy Code codifies a power that has a long lineage in insolvency law. *See, e.g.*, *Sunflower Oil Co. v. Wilson*, 142 U.S. 313, 322-23 (1892) (allowing railway receiver choice between assumption and rejection of contracts).

16   *See, e.g.*, *In re Carmichael*, 109 B.R. 849, 852 (Bankr. N.D. Ill. 1990).

17   *See* 11 U.S.C. § 365(d)(1).

18   *See id.* § 365(d)(2). As with many general rules, there are specific exceptions. Most notably, the breathing spell associated with "an unexpired lease of nonresidential real property under which the debtor is the lessee" cannot be longer than 210 days absent prior written consent of the lessor. *See id.* § 365(d)(4).

19   *See, e.g.*, *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531-32 (1984); *Mason v. Official Comm. of Unsecured Creditors (In re FBI Distrib. Corp.)*, 330 F.3d 36, 43-44 (1st Cir. 2003); *In re Computer Commc'ns, Inc.*, 824 F.2d 725, 729-31 (9th Cir. 1987); *Hall v. Perry (In re Cochise College Park, Inc.)*, 703 F.2d 1339, 1352 (9th Cir. 1983). There are again some specific exceptions to this general rule. For example, pending assumption or rejection, the estate representative must perform obligations of the debtor under unassumed leases of nonresidential real property and personal property. *See* 11 U.S.C. § 365(d)(3), (d)(5). Moreover, counterparties to certain protected categories of agreements can exercise contractual rights to cause the liquidation, termination, or acceleration of their agreements notwithstanding the bankruptcy filing. *See id.* §§ 555, 556, 559, 560, 561.

**MEMORANDUM DISPOSITION**
**RESOLVING MOTION TO COMPEL**   Page 4

bankruptcy estate; during the interim period, the estate representative may compel specific performance from the counterparty,[20] let markets unfold to strategically deploy the temporal "twist" associated with rejection with the benefit of hindsight,[21] or terminate or cancel part or all of the agreement in accordance with its terms.[22]

The tactical and economic benefits generated for a bankruptcy estate through bankruptcy law's treatment of executory contracts and unexpired leases can come at significant – even arguably unfair – cost to nondebtor counterparties. Such costs, however, result from Congress's deliberate balancing of how best to allocate an insolvent debtor's losses among its stakeholders; limiting the rights of contract counterparties equitably situates their sacrifices among those of most other creditors in the bankruptcy process.[23] Moreover, the Bankruptcy Code contains mechanisms a frustrated contract counterparty can employ to mitigate risk, such as moving under section 362(d)(1) to lift the automatic stay so the counterparty can terminate the contract, moving under section 365(d)(2) to compel the estate representative to assume or reject the contract, moving under section 503(b)(1) for allowance of an administrative expense, or moving under section 1112(b)(1) to convert or dismiss the bankruptcy case (which, in the conversion scenario, would trigger the 60-day period under section 365(d)(1)). A contract counterparty who does not timely seek any of these forms of relief runs the risk that the estate representative will utilize the protective interim period to the counterparty's permanent disadvantage.

Although the bankruptcy law regarding executory contracts is broad, the law does not rewrite contracts wholesale. For example, the estate representative must address any given contract in its entirety and may not forage among favorable or unfavorable components.[24] Moreover, bankruptcy law does not generally revive

---

[20] *See, e.g.*, *In re Chick Smith Ford, Inc*., 46 B.R. 515, 519 (Bankr. M.D. Fla. 1985).

[21] *See, e.g.*, *In re Enron Corp*., 330 B.R. 387 (Bankr. S.D.N.Y. 2005) (concluding that retroactive effect of rejection of electricity purchase agreement yielded a $0 damages claim even though postpetition movements in energy markets imposed substantial losses on the counterparty), *aff'd*, 354 B.R. 652 (S.D.N.Y. 2006).

[22] *See, e.g.*, *Bildisco*, 465 U.S. at 516-17; *In re N. Am. Royalties, Inc.*, 276 B.R. 860, 865-66 (Bankr. E.D. Tenn. 2002). It cannot be repeated too often that bankruptcy **rejection** of a contract and its resulting deemed prepetition breach and **termination** of a contract are conceptually distinct acts that may have divergent legal consequences for the bankruptcy estate or nondebtor counterparties. *See, e.g.*, *Tempnology*, 139 S. Ct. at 1662.

[23] *See Grp. of Institutional Investors v. Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*, 318 U.S. 523, 554-55 (1943) (Douglas, J.).

[24] *See, e.g.*, *Bildisco*, 465 U.S. at 531 (reciting the "*cum onere*" rule of contract assumption).

**MEMORANDUM DISPOSITION**
**RESOLVING MOTION TO COMPEL** Page 5

contracts that have expired or been terminated pursuant to their own terms. Indeed, an expired or terminated contract is not "executory" and hence not subject to assumption or rejection.[25]

## FINDINGS & CONCLUSIONS

Because this chapter 11 case lacks a confirmed plan, the deadline for assumption or rejection of executory contracts under section 365(d)(2) has not arrived. As such, the chapter 11 trustee yet enjoys the rights and powers provided during the "breathing spell."

During this interim period, the debtor's prepetition contracts, including any with Wild Onion, are enforceable by the trustee against the nondebtor counterparties.[26] Here, the trustee exercised his asserted rights regarding the Wild Onion contract by seeking to compel postpetition performance by Wild Onion and, when unsuccessful, cancelling the contract.

This cancellation occurred before Wild Onion moved to compel rejection under section 365(d)(2). As a result, the trustee effectively mooted the motion at its inception. After the trustee cancelled (i.e., terminated) any contract with Wild Onion, nothing remains to reject. And, as concisely explained in *Gloria Manufacturing*, the temporal "relation-back" consequence that occurs upon rejection is not triggered because that consequence "applies only if rejection of a contract is effective" and there can be no effective rejection of an expired or terminated contract.[27] As such, there is no relief at this point in this case that can be granted to Wild Onion under section 365(d)(2). This outcome has no bearing

---

[25] *See, e.g.*, *Gloria Mfg. Corp. v. Int'l Ladies' Garment Workers' Union*, 734 F.2d 1020, 1022 (4th Cir. 1984); *In re Texscan Corp.*, 107 B.R. 227, 230 (B.A.P. 9th Cir. 1989); *In re Spectrum Info. Techs.*, 193 B.R. 400, 404 (Bankr. E.D.N.Y. 1996); *In re Uly-Pak, Inc.*, 128 B.R. 763, 766 (Bankr. S.D. Ill. 1991). The court views these and similar decisions as persuasive authority that is correctly and logically decided – a contract that has died a natural death through expiration or termination cannot be reanimated through assumption (because there is nothing to assume) or sidestepped through rejection and the resulting deemed breach (because there are no prospective obligations for the estate to forgo). Nevertheless, the court notes that a panel of the Court of Appeals for the Ninth Circuit declined to decide whether it agreed with this line of authority. *See Agarwal v. Pomona Valley Med. Grp., Inc. (In re Pomona Valley Med. Grp., Inc.)*, 476 F.3d 665, 669 n.5 (9th Cir. 2007).

[26] Wild Onion argued that this principle should not apply to contracts in which the nondebtor counterparty purchases goods from a debtor. Although Wild Onion made a valiant effort to distinguish the facts of several cases in which contracts have been subject to the one-side enforcement status during the interim period, the court is unaware of any statutory or other basis on which to draw the distinction Wild Onion urges. When Congress intended for certain breeds of contracts to be carved out of section 365's general rules, Congress has consistently added specific exceptions to the statute, but there are none of the sort Wild Onion proposes.

[27] *See* 734 F.2d at 1022.

**MEMORANDUM DISPOSITION**
**RESOLVING MOTION TO COMPEL**       Page 6

on whether Wild Onion is liable to the estate for the alleged failure to perform or the extent to which liability would yield damages. Those issues must be adjudicated in the context of the pending adversary proceeding without any alteration that might have resulted from rejection.

## SUMMATION

As a result of the trustee's cancellation of any contract the debtor may have had with Wild Onion, there no longer is an extant executory contract the trustee could assume or reject. The court cannot grant the relief Wild Onion seeks and thus denies its motion as moot.